Curia, per Sutherland, J.
This was an action on the case, brought by Russell against Scott, for overflowing the plaintiff’s land and destroying a valuable spring of water, by the erection or raising of a mill dam. The suit was originally commenced before a justice of the peace of the county of Delaware; and was removed into the court of common pleas upon a plea of title; and brought from that court into this upon a bill of exceptions and writ of error. Both parties hold under leases in fee from Mrs, Montgomery. The lease to Russell bears date the 4th of July, 1810; that to Scott on the 1st of March, 1815; though both parties appear to have been in possession of the respective parcels for which their leases were given, many years before their date.
The lease to Russell is for a certain lot of land, particularly described, &c. containing 193 acres, excepting there-out seven *acres and four perches, now in the use and occupation of Robert Scott, (the defendant,) and also saving and reserving to Mrs. Montgomery, &c. all water courses suitable for the erection of mills, with the right of erecting mills and other works thereon, with three acres of land adjoining thereto ; and also saving and reserving the right to erect dams and cut ditches, for the use of such water i works; and also reserving all mines and minerals found in the demised premises, with the sole and only right to dig for and work the same, the lessor compensating the lessee for any damage sustained thereby. The lease to Scott of the seven acres and four rods, contained no reversion of mill streams; and the rent was proportionably higher on that account. It appeared that Scott, as early as November, 1803, contracted with Russell, the plaintiff, for the purchase of the seven acres for the express purpose of building a grist mill upon them ; and the witness testified that he erected his mill dam immediately below the plaintiff’s line; and that he could not have a pond there without flowing back on the plaintift’s land. The defendant had previously erected a saw mill. The consideration paid by him, was the raising of the frame of a house for Russell; *298 and Scottwas also to pay the rent to Mrs. Montgomery, or get ^ separate lease for it from her. Russell probably had a eon-tract for a lease for the whole lot prior to that time, though the lease was not given untill 810; andwhengiven, the seven acres which Scott then held under the contract with Russell, were excepted from his lease, and a separate lease for them given to Scott. In 1824, Scott raised his mill dam much higher'than it was before, which caused the injury complained of by the plaintiff. The first dam did him no material injury. The land of the plaintiff which was overflowed, including the bed of the stream, was one acre and a half and thirty-five perches.
The lease to Scott was produced, with an endorsement upon it signed by Mrs. Montgomery, bearing date the 8th of September, 1825, by which she declared that it was the intention of the parties to' the lease, that the lessee, Scott, should have a right of erecting a mill upon the premises, and enjoy all the rights reserved to the lessor in the lease to the plaintiff, *Russell. The reading of this instrument was objected to, as was also a copy of a letter addressed to the plaintiff by David Thompson, who acted as the agent of Mrs. Montgomery. The plaintiff offered to show the amount of damages sustained by him and also, that Mrs.' Montgomery and the defendant had both refused to make him any compensation. The evidence was excluded. To which decision, as well as to the admission of the defendant’s evidence, the plaintiff excepted.
The jury found a verdict for the defendant on the issue of title to the land and spring overflowed by the erection of the defendant’s dam.
It was contended by the defendant, that the plaintiff had not a sufficient possession of the premises in question to enable him to maintain this action. He was an old man, of more than 90 years of age ; and lived with his sons, who worked his farm and took care of him and1 his wife ; but the title remained in the old man, and there does npt appear to have been any contract between him and his sons by which the exclusive right of possession was vested in *299 them. The possession of the farm, as well as the title, I am inclined to think, was, in judgment of law, in the plaintiff.
The reservation of the seven acres by Mrs. Montgomery, from the lot leased to the plaintiff, left those seven acres precisely as though they had not been a part of the lot leased, but had originally belonged to an adjoining lot. Whether the reservation of the water courses, suitable for the erection of mills, with the right of erecting mills thereon, with three acres of land adjoining thereto, would authorize Mrs. Montgomery to erect a mill, not upon the lot leased to the plaintiff but upon an adjoining lot, and build a dam which would overflow three acres- of the plaintiff’s land, may admit of some question. The effect of the reservation is, to retain in the hands of the lessor a right to all the mill seats on the demised premises, with three acres of land adjoining, whenever she should make a location. But if there is no mill seat upon the lot, the reservation becomes nugatory and unavailing. “ A water course suitable for the erection of mills,” is but another expression for a mill seat or seats ; for it is an absurdity *in terms to say that a stream is suitable for the erection of mills, upon which no mill can be erected.
But admitting that Mrs. Montgomery would have had a right to have erected a mill upon the seven acres reserved, and to have overflowed three acres of the plaintiff's land, did that right pass to the defendant-by his lease? The lease contained no special provisions. It was a simple lease in fee, reserving rent only. The right to erect mills upon the lands demised to him, was undoubtedly acquired by the defendant; but not the right to overflow his neighbor’s land with his mill-pond. That right was not appurtenant or annexed to his land. If Mrs. Montgomery possessed it, it was by virtue of a special reservation to herself; it was an incorporeal hereditament in her, which would pass only by express grant. (Thompson v. Gregory, 4 John. 83. Jackson v. Vermillyea, 6 Cowen, 680.) Nor can the defendant derive any benefit from the memorandum *on the back of his lease, made by Mrs. Mont *300 gomery, on the ■ 8th day of September, 1825. It is a mere declaration of what were Mrs. Montgomery’s inten tions in giving the lease. It does not purport to convey anything. It-,is a mere deed óf confirmation. But if it did convey anything, it was given after the commencement of this suit, and could not, of course, affect the rights of the parties.
The defendant, under his contract with the plaintiff prior to 1803, erected a grist mill and dam on his seven acres. To the extent which that dam causéd the plaintiff’s lands to be overflowed, the defendant is protected by lapse of time. (Stiles v. Hooker, 7 Cowen, 266.) but the dam was raised in 1824; audit is the injury resulting from the raising of the dam at that time, of which the plaintiff complains. It appears to have driven the water some twenty or thirty rods further back, and to have covered the spring which supplied the plaintiff’s family with water for their daily use. ,
It seems to me, therefore, that the plaintiff was entitled to recover, and that the judgment below ought to be reversed.
Judgment reversed.
.END OF AUGUST TERM